**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LACIMA, INC. D/B/A TRUCKNATION | § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. _____ |
| TEXAS TRUCK LINES, INC. d/b/a TEXAS TRUCK SALES, and AMYN NARSI, | § § § § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

### I.    NATURE OF THE CASE

1.    Plaintiff LaCima Inc., d/b/a TruckNation ("TruckNation" or "Plaintiff"), a leading commercial vehicle dealership and owner of the incontestable federally-registered TRUCKNATION trademark/service mark (hereafter the "TRUCKNATION mark"),[1] brings this action against Defendant Texas Truck Sales, Inc. and Amyn "Emmett" Narsi ("Texas Truck Sales" and "Narsi," respectively, collectively referred to as "Defendants") for trademark infringement, unfair competition, unjust enrichment, and cybersquatting.

2.    Defendants have registered the trucknationhouston.com and trucknationdallas.com domains (the "Infringing Domains") to misdirect potential commercial vehicle purchasers, diverting these potential purchasers away from TruckNation's website to the competing website maintained by the Defendants at www.texastrucksales.com. The Defendants' conduct has and

---

[1] Plaintiff's trademark/service mark is designated and referred to in this Complaint as the TRUCKNATION trademark/service mark, matching the manner in which the United States Patent and Trademark Office ("USPTO") designates the literal elements of the mark on the first page of the service mark registration documents attached to this Complaint as Exhibit A.  In the upper right-hand portion of that same page is a graphic exemplar of the TRUCKNATION trademark/service mark as it is commonly used by the Plaintiff, in which the name/word "Trucknation" or "TRUCKNATION" is preceded by a globe comprised solely of meridians and parallels.

1

continues to generate actual confusion among potential customers, harming Plaintiff's business interests while diluting and diminishing the value of the protected service mark owned by the Plaintiff. Accordingly, Plaintiff seeks to enjoin Defendants' continued infringement of the well-known TRUCKNATION mark, an order directing Defendants to transfer the Infringing Domains to Plaintiff's control, and damages for the injury caused by Defendants' unlawful conduct.

## II.   PARTIES

3.   Plaintiff TruckNation is a Texas corporation engaged in the business of selling used commercial vehicles and maintains its principal place of business in Houston, Texas.

4.   Defendant Amyn "Emmett" Narsi is the registrant, administrative contact, and technical contact for the Infringing Domains, and is also the President, CEO, owner, and registered agent of Texas Truck Lines, Inc., d/b/a Texas Truck Sales. Defendant Narsi maintains an address in Houston and may be located at 9343 N Loop East, Houston Texas 77029 or 3700 N. McCarty Drive, Houston Texas 77029.

5.   Defendant Texas Truck Lines, Inc., d/b/a Texas Truck Sales (hereafter referred to as "Defendant Texas Truck Sales" or "Texas Truck Sales") is a Texas corporation engaged in the business of selling used commercial vehicles. Defendant Texas Truck Lines, Inc. maintains places of business at 9343 North Loop East, Houston, Texas 77029 and 3700 N. McCarty St., Houston, Texas 77029. The registered agent for Texas Truck Lines, Inc. is Amyn Narsi, 3700 N. McCarty St., Houston, Texas 77029.

## III.   JURISDICTION AND VENUE

6.   This Court has federal question jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, as well as supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant Narsi resides in this District, Defendant Texas Truck Lines is subject to personal jurisdiction in this District by virtue of its business operations at the addresses listed in Paragraph 6, *supra*, all Defendants named in this civil action are residents of the State of Texas, and a substantial portion of the events giving rise to the claims for relief stated in this Complaint occurred in this District.

## IV.     THE TRUCKNATION MARK

8.     Since 1997, TruckNation has extensively used the TRUCKNATION mark in its business of selling and servicing commercial vehicles.  TruckNation has dedicated substantial time and resources over the years toward building its reputation through in-person sales and services, customer contact, and the development of a robust online presence[2] to attract potential customers through the Internet.  As a result, there is substantial, valuable customer goodwill toward the famous TRUCKNATION mark, and widespread reputation among commercial vehicle consumers associating the TRUCKNATION mark with an established and reputable business selling pre-owned tractor trailers and providing maintenance and repair services for medium and heavy duty commercial vehicles.

9.     On July 26, 2005, the TRUCKNATION mark was registered with the United States Patent and Trademark Office ("USPTO"), establishing TruckNation as the owner of the mark for tractor trailer dealerships.  Additionally, TruckNation filed a combined declaration of use and incontestability with the USPTO on August 25, 2010, which was accepted and acknowledged by the USPTO as meeting the requirements for incontestability under 15 U.S.C. § 1065, and thus conclusively establishing the secondary meaning of the TRUCKNATION mark in the minds of

---

[2] TruckNations's website, found at http://www.trucknation.com/default.htm, includes extensive information on the goods and services offered by TruckNation, and also provides potential customers with a variety of options for contacting TruckNation representatives.  TruckNation also has a broad social media presence, including a Facebook page, accounts with Twitter and LinkedIn, and even a brief aerial video of the dealership posted on YouTube.

the public. *E.g.*, *Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F.Supp.2d 726, 742-43 (N.D. Tex. 2011) (citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980).[3]

## V. DEFENDANTS' UNLAWFUL CONDUCT

10. Defendants operate a Houston pre-owned tractor trailer dealership that competes directly with TruckNation, selling tractor trailers from two locations in close physical proximity to TruckNation's place of business. Defendants' closest location, at 9343 North Loop East, is roughly one-half mile away from TruckNation's place of business, located on the same side of the freeway at 10015 North Loop East, with only two other businesses (J.B. Hunt Transport and Penske Truck Rentals) interrupting the line of site between the TruckNation and Texas Truck Sales lots.

11. The longstanding registration of TruckNation's trademark/service mark with the USPTO, the close physical proximity of TruckNation's place of business, TruckNation's extensive presence on the World Wide Web and social media platforms, TruckNation's prominence as a seller of pre-owned tractor trailers, and the generalized reputation and fame associated with the TRUCKNATION mark make clear that Defendants must have had full knowledge and awareness of TruckNation's trademark/service mark at all times relevant to the subject matter of this civil action. Indeed, TruckNation's trademark/service mark became incontestable on August 25, 2010 with the filing of an affidavit with the USPTO meeting the requirements of 15 U.S.C. § 1065. Accordingly, Defendants are completely precluded from claiming they were unaware of the secondary meaning of TruckNation's trademark/service mark during all times relevant to the claims asserted in this civil action.

---

[3] A true and correct copy of the registration and incontestability documents for the TRUCKNATION trademark/service mark, Registration No. 2976351, is attached hereto as Exhibit A.

12.     Despite their knowledge of TruckNation's ownership and use of the TRUCKNATION mark, Defendants nonetheless deliberately sought to benefit from infringing TruckNation's protected interests in the TRUCKNATION mark by registering the trucknationhouston.com domain on December 12, 2014, from which they funneled all traffic for that domain to Texas Truck Sales' main site at www.texastrucksales.com.  On January 25, 2015, Defendants also registered the trucknationdallas.com domain, and again funneled all traffic from that domain to Defendants' main site.[4]

13.     Defendants' registration of these domains was unlawful[5] and in bad faith, meant to divert substantial Internet traffic away from TruckNation's website to the Defendants' own competing website.  Potential customers, already familiar with the famous TRUCKNATION mark and the quality goods and services associated with it, who attempt to navigate to Trucknation's website by typing "trucknationhouston" or "trucknationdallas" into the address bar of their Internet browser are deceived by the Defendants' infringing domain registration into visiting not the TruckNation website, but instead the website maintained by Texas Truck Sales.

---

[4] True and correct copies of the search results returned by ICANN WHOIS for the web domains discussed in this paragraph, establishing that "Emmett Narsi" registered both these websites for Texas Truck Sales, are attached hereto as Exhibit B.

[5] In addition to the prohibitions against infringing trademarks and service marks under federal and state law, the Defendants' web domains also violate the ICANN requirements for registration.  The policy applicable to all ICANN-accredited registrars establishes that anyone who applies to register a domain name represents and warrants to the registrar that:

> (a) the statements that you made in your Registration Agreement are complete and accurate; (b) to your knowledge, the registration of the domain name will not infringe upon or otherwise violate the rights of any third party; (c) you are not registering the domain name for an unlawful purpose; and (d) you will not knowingly use the domain name in violation of any applicable laws or regulations. It is your responsibility to determine whether your domain name registration infringes or violates someone else's rights.

Uniform Domain Name Dispute Resolution Policy, Section 2, *available at* https://www.icann.org/resources/pages/policy-2012-02-25-en.  ICANN policy further provides for transfer of infringing domains, stating that an ICANN registrar will transfer domain registrations upon "receipt of an order from a court or arbitral tribunal, in each case of competent jurisdiction, requiring such action." *Id.*

14.     Upon information and belief, TruckNation has been and will continue to be deprived of potential customers due to Defendants' bad faith conduct described above. Customers diverted to Texas Truck Sales' website may fail entirely to realize they are visiting a competitor's website, or assume that the combination of equivalent listings on Defendants' website and the URL displayed by their web browser indicate that "Texas Truck Sales" is another fictitious name under which TruckNation transacts business. Alternatively, potential customers who notice that they have been diverted to a website with a different name and/or URL than expected may become confused as to whether TruckNation had rebranded itself as Texas Truck Sales, or may conclude TruckNation has ceased operations and Texas Truck Sales has taken over its former web domains. Still other customers may assume Texas Truck Sales is a subsidiary, licensee, franchisee, successor, or other business affiliated with TruckNation.

15.     Upon information and belief, these unlawful and deceptive business practices have caused and continue to cause TruckNation to suffer economic damages from lost sales, as well as irreparable harm to the business reputation and consumer goodwill that TruckNation has painstakingly cultivated over the past two decades. Defendants' bad faith conduct[6] described herein injures TruckNation's business and enriches the Defendants, and was clearly calculated by the Defendants to intentionally and unlawfully derive benefit from the reputation and goodwill associated with the incontestable, federally registered TRUCKNATION mark.

16.     Upon information and belief, and as a direct result of Defendants' actions described above, Plaintiff has sustained, and will continue to sustain, damages in the form of lost profits, as well as

---

[6] In addition to other grounds for finding bad faith on the part of the Defendants, their registration and use of the infringing web domains identified above constitutes *per se* evidence of bad faith under ICANN policy, either as registration "primarily for the purpose of disrupting the business of a competitor," or as an intentional attempt "to attract, for commercial gain, Internet users to [the party's] web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location." Uniform Domain Name Dispute Resolution Policy, Section 4b, *available at* https://www.icann.org/resources/pages/policy-2012-02-25-en.

6

injury to the valuable goodwill and reputation associated with the TRUCKNATION mark for which there is no adequate remedy at law. Defendants' conduct has and will continue to dilute TruckNation's trademark/service mark, both by blurring and tarnishment as those terms are defined under 15 U.S.C. § 1125(c) and Texas Business & Commerce Code § 16.001, discussed in more detail below. Defendants' conduct has injured and is likely to continue working injury in the future to TruckNation's business reputation. These continued injuries to TruckNation's interests have no adequate remedy at law, in large part because they defy ready quantification, and should be enjoined under the authorities discussed in the separate section of this Complaint requesting injunctive relief under both the Lanham Act and Texas Business & Commerce Code § 16.103.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Infringement of Federally Registered Trademark or Service Mark - 15 U.S.C. § 1114**

17.    TruckNation incorporates by reference and realleges Paragraphs 1 through 16 of this Complaint as if set forth fully here.

18.    TruckNation and its predecessors in interest have used the TRUCKNATION mark in commerce for roughly twenty years in connection with the business operations described above, as well as advertising and promotional activities designed to elevate awareness of TruckNation's operations among commercial vehicle consumers in Texas and around the United States. As a result, the inherently distinctive and famous TRUCKNATION mark has acquired secondary meaning in the minds of the consuming public, such that it is famous and uniquely associated with TruckNation's sale of pre-owned tractor trailers and service of commercial vehicles. Indeed, the

secondary meaning of the TRUCKNATION mark in the minds of the public has been incontestable since August 2010, as established in Paragraph 9, above.

19. By their actions described above, Defendants have used and continue to use a reproduction, copy, and/or colorable imitation the distinctive, famous, incontestable and legally protectable TRUCKNATION mark. Defendants' use of the TRUCKNATION mark was and is without TruckNation's license or consent, and has been specifically used by the Defendants' in commerce, as a deliberate, willful, and fraudulent means of soliciting customers for Defendants' competing goods and services.

20. Defendants directly compete with TruckNation in the same channels of trade to sell the goods and services described above, most notably for purposes of this lawsuit by online promotion and solicitation of potential customers. Under the circumstances described herein, Defendants' acts are therefore likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendants' goods and/or services, as well as confusion as to whether Defendants' business is affiliated with TruckNation in some manner. In either instance, Defendants' conduct violates and subjects them to liability under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

21. Upon information and belief, and as a direct result of Defendants' actions, TruckNation has sustained and will continue to sustain damages, including irreparable harm to the valuable goodwill and business reputation associated with the TRUCKNATION mark for which there is no adequate remedy at law. Under 15 U.S.C. § 1117, TruckNation is entitled to recover actual damages for lost profits attributable to Defendants' infringing conduct, or alternatively TruckNation may recover as damages the Defendants' profits attributable to their unlawful use of TruckNation's trademark/service mark in light of Defendants' willful infringement, diversion of sales, the inadequacy of other remedies, and the public interest in making Defendants' conduct

unprofitable. Defendants' conduct may also be enjoined pursuant to 15 U.S.C. § 1116, and TruckNation may also be entitled to an award of attorney fees under 15 U.S.C. § 1117.

22. Unless enjoined from doing so, the Defendants will in all likelihood continue infringing TruckNation's trademark/service mark, further irreparably damaging TruckNation's legally protectable interests as detailed above. Preliminary and permanent injunctive relief is both available and appropriate, as provided by 15 U.S.C. § 1125 and discussed in greater detail below.

## SECOND CAUSE OF ACTION

### False Designation, False Description, and Dilution - 15 U.S.C. § 1125

23. TruckNation incorporates by reference and realleges Paragraphs 1 through 22 of this Complaint as if set forth fully here.

24. By their actions described above (including, but not limited to, registration of two web domains comprised in part and/or incorporating the word or phrase "trucknation"), the Defendants have, without TruckNation's consent, used words, terms, names, or devices, singularly or in combination, as well as false designations of origin and/or false or misleading descriptions or representations of fact which are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants with TruckNation.

25. Alternatively, the Defendants have through their actions described above (including, but not limited to, registration of two web domains comprised in part and/or incorporating the word or phrase "trucknation"), and without TruckNation's consent, used words, terms, names, or devices, singularly or in combination, as well as false designations of origin and/or false or misleading descriptions or representations of fact which are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of TruckNation as to the Defendants' goods, services, or commercial activities.

26.     Upon information and belief, and as a result of Defendants' actions, TruckNation has sustained, and will continue to sustain, damages in the form of lost sales opportunities and/or profits realized by the Defendants through their unlawful conduct.  TruckNation has further suffered irreparable harm for which there is no adequate remedy at law, including, but not limited to, harm to the business reputation and consumer goodwill directed to its business operations. Unless enjoined by this Court in accordance with 15 U.S.C. § 1116(a), Defendants are likely to continue to engage in the conduct described above, causing further irreparable injury to TruckNation's legally protectable interests as the owner of the TRUCKNATION mark.

27.     As detailed above, Defendants' actions were and are willful violations.  Defendants' conduct was undertaken in bad faith, as part of a deliberate scheme to fraudulently, willfully, and deliberately confuse and entice customers away from TruckNation, thus rendering this lawsuit an "exceptional case" as that term is interpreted under 15 U.S.C. § 1117(a).  *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996) (noting that an exceptional case under Section 1117 is one in which the violative acts can be characterized as malicious, fraudulent, deliberate, or willful); *see also Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598, 621 (S.D. Tex. 2014) (analyzing request for attorney fees pursuant to 15 U.S.C. § 1117 under the *Seven-Up* "malicious, fraudulent, deliberate, or willful" standard).

### THIRD CAUSE OF ACTION

**Unfair Competition Under Texas Common Law**

28.     TruckNation incorporates by reference and realleges Paragraphs 1 through 27 of this Complaint as if set forth fully here.

29.     As set forth above, the TRUCKNATION mark is eligible for protection under Texas common law, both as a suggestive mark and/or a mark that has acquired secondary meaning

through usage.  *E.g.*, *All American Builders, Inc. v. All American Siding of Dallas, Inc.*, 991 S.W.2d 484, 489-90 (Tex. App—Fort Worth 1999, no pet.).  TruckNation is indisputably the senior user of the TRUCKNATION mark, having used it in its business operations since 1997.  Defendants' bad faith registration of the "trucknationhouston" and "trucknationdallas" web domains, as part of Defendants' scheme to profit from TruckNation's business reputation and consumer goodwill, has confused and is likely to confuse consumers, causing lost profits and irreparable injury to TruckNation's interests for which there is no adequate legal remedy in the manner set forth above.

30.  Accordingly, TruckNation is entitled under Texas common law to recover damages at law from Defendants, as well as to seek injunctive relief to preclude Defendants' continued infringement and dilution of the TRUCKNATION mark.

## FOURTH CAUSE OF ACTION:

**Injury To Business Reputation Or Trademark Dilution - Tex. Bus. & Com. Code § 16.103**

31.  TruckNation incorporates by reference and realleges Paragraphs 1 through 30 of this Complaint as if set forth fully here.

32.  As discussed above, the TRUCKNATION mark is both famous and distinctive by virtue of its promotion and use by TruckNation and its predecessors in interest over the past two decades.  Defendants registered and began using the "trucknationhouston" and "trucknationdallas" web domains in December 2014 and January 2015, respectively, well after the point at which the TRUCKNATION mark had become famous by virtue of promotion and its association with the business operations of TruckNation.

33.  Defendants' commercial use of the infringing web domains has diluted and will continue to dilute TruckNation's trademark/service mark, both by blurring that diminishes the TRUCKNATION mark's ability to clearly and unmistakably distinguish TruckNation as the

source of goods and services, and also by tarnishment that diminishes the good reputation TruckNation has carefully cultivated in association with its mark. *E.g., Viacom Int'l Inc. v. IJR Cap. Inves., LLC*, No. H-16-257, 2017 WL 1037294, at *7 (S.D. Tex. Mar. 17, 2017) (describing distinction between dilution by blurring and tarnishment).

34. Upon information and belief, and as a result of Defendants' actions, TruckNation has sustained, and will continue to sustain, damages in the form of lost sales opportunities and/or profits realized by the Defendants through their unlawful conduct. TruckNation has further suffered irreparable harm for which there is no adequate remedy at law, including, but not limited to, harm to the business reputation and consumer goodwill directed to its business operations, as well as dilution by blurring and tarnishment of the TRUCKNATION mark, which is a "famous" mark as set forth herein and as that term is interpreted under Texas Business & Commerce Code § 16.103(b). Unless enjoined by this Court in accordance with the provisions of Texas Business & Commerce Code § 16.103(c), Defendants are likely to continue to engage in the conduct described above, causing further irreparable injury to TruckNation's legally protectable interests as the owner of the TRUCKNATION mark.

35. As detailed above, Defendants' actions were and are willful violations under Texas Business & Commerce Code § 16.103(c). Defendants' conduct was also undertaken in bad faith, as part of a deliberate scheme to fraudulently, willfully, and deliberately confuse and entice customers away from TruckNation. Under Texas Business & Commerce Code §§ 16.103 and 16.104, TruckNation is entitled to judgment in an amount equal to three times the amount of its damages and/or Defendants' profits, and is also entitled to recover an additional reasonable amount for attorneys' fees.

## FIFTH CAUSE OF ACTION:

### Tortious Interference with Prospective Business Relations

36. TruckNation incorporates by reference and realleges Paragraphs 1 through 35 of this Complaint as if set forth fully here.

37. There was a reasonable probability that TruckNation would have entered into a business relationship with consumers who attempted to navigate to TruckNation's website by typing "trucknationhouston" or "trucknationdallas" into the address bar of their Internet browsers.

38. Defendants intentionally interfered with the prospective relationship by improperly and unlawfully registering the "trucknationhouston" and "trucknationdallas" web domains, from which Defendants funneled all traffic to Texas Truck Sales' competing web page at www.texastrucksales.com.

39. Under the circumstances described herein, it is clear that Defendants' acts were done with a conscious desire to prevent the formation of a business relationship between TruckNation and consumers seeking TruckNation's website. Additionally, Defendants were at least substantially certain that their conduct would prevent a business relationship from being formed between TruckNation and some consumers who typed "trucknationhouston" or "trucknationdallas" into the address bar of their Internet browsers, either because those consumers did not notice they had been diverted to the website of a competing business, or because they were misled or erroneously assumed that Texas Truck Sales was a subsidiary, successor, or otherwise in some way affiliated or working in cooperation with TruckNation.

40. Defendants' conduct was independently tortious or unlawful as set forth in the other Counts included in this Complaint. Defendants' conduct was also unlawful by virtue of violating the applicable ICANN requirements for web domain registration, discussed above.

41.     Upon information and belief, Defendants' interference proximately caused injury to Plaintiff by diverting potential sales from TruckNation to Defendants. Moreover, as a result of Defendants' actions, Plaintiff has sustained, and will continue to sustain, harm, including to its valuable goodwill and reputation established in connection with the use and promotion of Plaintiff's trademark, causing loss of profits and other harm for which there is no adequate remedy at law.

42.     Additionally, Defendants' actions described above were fraudulent and malicious as those terms are interpreted under Texas Civil Practice & Remedies Code §§ 41.001(6)-(7) and 41.003(a), in light of Defendants' undeniable knowledge of TruckNation's business operations and use of the established, federally registered, and incontestable TRUCKNATION mark. The fraudulent and malicious nature of Defendants' actions justifies the imposition of exemplary damages.

43.     Unless restrained and enjoined, Defendants are likely to continue to interfere with Plaintiff's prospective business relationships, causing Plaintiff irreparable harm for which there is no adequate remedy at law. Accordingly, TruckNation requests injunctive relief as detailed below in accordance with Federal Rule of Civil Procedure 65(a).

## SIXTH CAUSE OF ACTION:

### Trademark Infringement Under Texas Common Law

44.     TruckNation incorporates by reference and realleges Paragraphs 1 through 43 of this Complaint as if set forth fully here.

45.     As established above, TruckNation's ownership interest in the TRUCKNATION mark/trade name/service name is eligible for protection under both federal and state law, and TruckNation is the uncontested (and, for purposes of federal registration, incontestable) senior user of mark/name.

46. Defendants' unauthorized use of the "trucknationhouston" and "trucknationdallas" web domains is likely to confuse consumers, as discussed herein, either because those consumers did not notice they had been diverted to the website of a competing business, or because they were mislead or erroneously assumed that Texas Truck Sales was a subsidiary, successor, or otherwise in some way affiliated or working in cooperation with TruckNation.

47. Upon information and belief, Defendants' actions have caused irreparable harm to TruckNation's goodwill and reputation established in connection with the use and promotion of the TRUCKNATION mark/trade name/service name, as well as causing actual damages to TruckNation in terms of lost sales for which Defendants' have unlawfully realized profits by diverting TruckNation's customers to Defendants' competing website.  Unless Defendants are restrained and enjoined, TruckNation will continue to suffer further irreparable harm in the future, for which there is no adequate remedy at law as long as Defendants' are permitted to maintain and use the infringing "trucknationhouston" and "trucknationdallas" web domains.  Accordingly, TruckNation requests injunctive relief as detailed below in accordance with Federal Rule of Civil Procedure 65(a).

48. Additionally, Defendants' actions described above were fraudulent and malicious as those terms are interpreted under Texas Civil Practice & Remedies Code §§ 41.001(6)-(7) and 41.003(a), in light of Defendants' undeniable knowledge of TruckNation's business operations and use of the established, federally registered, and incontestable TRUCKNATION mark.  The fraudulent and malicious nature of Defendants' actions justifies the imposition of exemplary damages.

## SEVENTH CAUSE OF ACTION:

### Unjust Enrichment

49. TruckNation incorporates by reference and realleges Paragraphs 1 through 48 of this Complaint as if set forth fully here.

50. Defendants' unlawful registration and use of the "trucknationhouston" and "trucknationdallas" domains, described above, allowed Defendants to obtain the benefit of additional web traffic and potential customers at TruckNation's expense. The fraudulent acts of Defendants, both in registering these domains and in exploiting potential customers redirected to Texas Truck Sales website from those domains, upon information and belief has led to the unjust enrichment of the Defendants for which TruckNation is entitled to recover either the value of those potential business opportunities or the profits realized by Defendants on sales and services attributable to their unlawful conduct.

## EIGTH CAUSE OF ACTION:

### Violations of The Anti-Cybersquatting Consumer Protection Act

51. TruckNation incorporates by reference and realleges Paragraphs 1 through 50 of this Complaint as if set forth fully here.

52. Defendants' registration and use of the "trucknationhouston" and "trucknationdallas" web domains violates the anti-cybersquatting provisions of the Lanham Act, 15 U.S.C. § 1125(d). The circumstances described herein establish that the Defendants had a bad faith intent to profit from infringement of the TRUCKNATION mark by registering and using those web domains in commerce.

53. The names for those web domains are substantially identical to and confusingly similar to the TRUCKNATION mark, creating a likelihood of confusion as to the source, sponsorship,

affiliation, and endorsement of Defendants' web domains and website, as well as the goods and services promoted through Defendants' website. As such, the web domains registered and used by Defendants are dilutive of the TRUCKNATION mark, both by blurring that diminishes the TRUCKNATION mark's ability to clearly and unmistakably distinguish TruckNation as the source of goods and services, and also by tarnishment that diminishes the good reputation TruckNation has carefully cultivated in association with the TRUCKNATION mark.

54. Upon information and belief, and as a result of Defendants' actions, TruckNation has sustained, and will continue to sustain, damages in the form of lost sales opportunities and/or profits realized by the Defendants through their unlawful conduct. TruckNation has further suffered irreparable harm for which there is no adequate remedy at law, including, but not limited to, harm to the business reputation and consumer goodwill directed to its business operations, as well as dilution by blurring and tarnishment of the TRUCKNATION mark, which is a "famous" mark as set forth herein and as that term is interpreted under 15 U.S.C. § 1125(c). Unless enjoined by this Court in accordance with the provisions of 15 U.S.C. § 1125(c), Defendants are likely to continue to engage in the conduct described above, causing further irreparable injury to TruckNation's legally protectable interests as the owner of the TRUCKNATION mark. Accordingly, TruckNation requests injunctive relief pursuant to 15 U.S.C. § 1125(c), as detailed below.

## VII. PRAYER FOR RELIEF

55. TruckNation requests an accounting, pursuant to 15 U.S.C. § 1117(a), to establish the amount of profits realized by the Defendants as a result of their unlawful and infringing conduct.

56. Trucknation seeks relief as follows:

a) That the Court enter judgment in favor of TruckNation and against Defendants on all causes of action;

b) That the Court order transfer of the "trucknationhouston" and "trucknationdallas" web domains to TruckNation;

c) That the Court permanently enjoin Defendants from registering, transferring, or using any domain name, website, Facebook page, social media page, social media profile, or other commercial means of advertising or promoting their business that employs or incorporates any permutation of the names or phrases "TruckNation," "trucknationhouston," "trucknationdallas," or other confusingly similar names or phrases calculated to dilute TruckNation's trademark/service mark as described herein;

d) That the Court award TruckNation damages in accordance including (1) Defendants' profits, (2) actual damages sustained by TruckNation, and (3) costs of suit, with trebling of the amounts awarded as permitted under 15 U.S.C. 1117(a) and Texas Business & Commerce Code § 16.104(c);

e) That the Court award statutory damages for Defendants' violation of the Anti-Cybersquatting Consumer Protection Act, if TruckNation elects to statutory damages before the entry of final judgment in this action, in an amount between $1,000 and $100,000 per infringing domain name registered by the Defendants;

f) Exemplary damages as provided under Texas law;

g) Court costs; and

h) Attorney fees as provided under Texas and federal law.

Respectfully submitted,

**MEJIAS LINDSAY, PLLC**

<u>*Carlos Dantes Mejias*</u>
Carlos Dantes Mejias
State Bar No. 24094841
cmejias@mejiaslindsay.com
David C. Lindsay
State Bar No. 24092703
Dlindsay@mejiaslindsay.com
Mark Ritchie
State Bar No. 24002845
Federal ID 1552510
mritchie@mlk.com
4900 Woodway Dr., Suite 750
Houston, Texas  77056
Tel:  832.426.4574
Fax:  281.783.8404

## CERTIFICATE OF SERVICE

I certify that on June 30, 2017 a true and correct copy of Plaintiff's Original Complaint and Applications for Temporary Restraining Order, Preliminary and Permanent Injunction was served to Defendants, through the e-file system and by electronic mail to Amyn "Emmett" Narsi on June 30, 2017, before 5:00 p.m. local time of the recipient.

/s/ Carlos Dantes Mejias
Carlos Dantes Mejias